**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**RONALD F. LEGRAND,** an individual,
and **HERITAGE FINANCIAL LIMITED
OF JACKSONVILLE, LLLP,** a Florida
limited liability limited partnership,

    Plaintiffs,

    v.                                                **CASE NO. 3:03-cv-1056-J-16MCR**

**REAL SOLUTIONS CORPORATION,** a
foreign corporation, and
**ROYAL MEDIA, INC.,** a foreign corporation,

    Defendants.
_____/

**O R D E R**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment, "Dispositive Motion" (Dkt. 82) and Memorandum in Support (Dkt. 83). The Plaintiffs attached various exhibits to the Memorandum in Support and also filed an affidavit (Dkt. 84), two deposition transcripts (Dkts. 87-88) and a Request for Oral Argument (Dkt. 85). Defendant Real Solutions filed a Response in Opposition (Dkt. 92) and attached a deposition transcript in support.

**I.    Procedural Posture**

On March 15, 2004 the Plaintiffs, Ronald F. LeGrand, an individual ("LeGrand"), and Heritage Financial Limited of Jacksonville, LLLP, a Florida limited liability limited partnership ("Heritage") filed their Verified Amended Complaint (Dkt. 4). In the Amended Complaint, Plaintiffs state four claims against Defendants[1] including unfair competition due to common law trademark infringement (Count I), invasion

---

[1] Plaintiffs' Verified Amended Complaint (Dkt. 4) lists the following as Defendants: Charles Mullaney Jr., an individual, Real Solutions Corporation ("Real Solutions"), Webbgroup Network Systems and Royal Media, Inc. ("Royal Media"). Currently, only Defendants Real Solutions and Royal Media are involved in the case. Moreover, because an entry of default was entered (Dkt. 90) against Royal Media, Plaintiffs' Partial Motion for Summary Judgment (Dkt. 83) is only directed toward Defendant Real

of privacy (Count II), federal copyright infringement (Count III) and unjust enrichment under federal trademark law (Count IV).

## II.     Factual Background

Plaintiffs allege that for more than twenty years, Plaintiff LeGrand has established himself as a nationally known, reputable and successful real estate investor (Dkt. 83 at 2). As such, Plaintiff LeGrand has allegedly developed and marketed various items including a set of materials known as "Ron LeGrand's Cash Flow Systems" (the "Cash Flow System"). Id. The Cash Flow System is comprised of 38 compact discs and three manuals selling for a retail price of nearly $1,500. Id. at 3. Plaintiffs allege that in marketing and distributing the Cash Flow System, Plaintiff LeGrand has used his name and likeness in multiple commercial and advertising capacities. Id.

On March 20, 2003 Plaintiffs executed a settlement agreement ("the Agreement") with International Media Holdings, Inc., SDI LeGrand Publishing, Inc., and SDI Wealth Institute, Inc. (collectively referred to as "the IMH parties"). Under this Agreement, the IMH parties were given a six month license to "utilize the 'LeGrand' name, likeness and image and the trade name 'Cash Flow Systems'. . .in order to distribute products then owned or ordered by them prior to the agreement." (Dkt. 83 at 3). Plaintiffs allege that before the Agreement, the IMH parties had placed an order with Defendant Royal Media to produce more than 2,000 copies of the Cash Flow System. Plaintiffs further allege that when Defendant Royal Media attempted to deliver the Cash Flow System materials, the IMH parties could not take possession of the shipment as they were unable to pay for it. Id. Plaintiffs therefore allege that Defendant Royal Media placed the Cash Flow System materials in storage and allege that because the IMH parties were the only parties licensed to use Plaintiff LeGrand's name and to sell his products, Defendant Royal Media had no

---

Solutions.

prospective buyers. Id. at 3.

Plaintiffs allege, however, that Defendant Royal Solutions contacted Defendant Royal Media about the excess copies of the Cash Flow System. Plaintiffs also allege that Defendant Royal Media "agreed to ship the materials to Real Solutions and Real Solutions would accept the materials on a consignment basis," only receiving payment after a copy of the Cash Flow System was sold. Plaintiffs contend the excess copies of the Cash Flow System were shipped without Plaintiff LeGrand's knowledge or consent. Moreover, that Defendant Real Solutions never received express written or oral consent to use Plaintiff LeGrand's "name or likeness for any trade, commercial, or advertising purposes" and that Defendant Royal Media did not have written authorization to license the commercial use of Plaintiff LeGrand's name or likeness (Dkt. 83 at 4).

Plaintiffs nevertheless assert that beginning in September 2003, Defendant Real Solutions began using Plaintiff LeGrand's name in order to market and distribute the excess copies of the Cash Flow System. Plaintiffs allege that these copies were placed for sale on internet websites, including the auction website www.ebay.com ("Ebay"), for prices ranging between $229.99 to $250.00 (Dkt. 83 at 4). Plaintiffs also contend that Plaintiff Heritage, on January 13, 2004, became the rightful owner of a valid copyright for the Cash Flow System. Despite this fact, Plaintiffs allege that Defendant Real Solutions has sold copies of the Cash Flow System after January 13, 2004 and that it continues to do so even after being advised the materials are copyrighted and any sale is therefore illegal.

Plaintiffs now move for Partial Summary Judgment (Dkt. 82) as to the claims of invasion of privacy (Count II) and federal copyright infringement (Count III) against Defendant Real Solutions. Plaintiffs argue there is no genuine issue as to any material fact and that the Court should enter judgment in their favor for these two claims as a matter of law.

**III.    Standard of Review**

The Court should grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact [such] that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987); Edwards v. Acadia Realty Trust, Inc., 141 F. Supp. 2d 1340, 1344-45 (M.D. Fla. 2001). The Court will construe the record and all inferences that can be drawn from it in the light most favorable to the nonmoving party, and the moving party bears the initial burden of establishing the absence of a genuine material fact. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Samples on Behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). Once this burden is met, however, the opposing party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 342. The Eleventh Circuit explained in Samples that the opposing party need only present evidence from which a jury might return a verdict in its favor in order to survive the moving party's motion for summary judgment. See Samples, 846 F.2d at 1330; see also Augusta Iron & Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).

Notably, the Supreme Court pointed out in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), that the moving party's burden only extends to facts that might affect the outcome of the lawsuit under the governing law, as "[f]actual disputes that are irrelevant or unnecessary will not be counted." Summary judgment will only be granted if all facts and inferences point overwhelmingly in favor of the moving party, such that a responsible jury could not find in favor of the opposing party. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). If there is conflicting evidence that will permit

differing reasonable inferences, the case will be submitted to the jury. See Augusta Iron & Steel, 835 F.2d at 856.

**IV.    Discussion**

**A.    Invasion of Privacy Claim**

In presenting a claim for invasion of privacy (Count II), Plaintiffs argue that Defendant Real Solutions violated the explicit language of Florida Statue § 540.08(1). In pertinent part, section 540.08(1) provides:

> [n]o person shall publish print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
> (a) Such person; or
> (b) Any other person, firm, or corporation authorized in writing by such person to license the commercial use of her or his name or likeness. . . .

Plaintiffs contend that it is undisputed that Defendant Real Solutions publicly used Plaintiff LeGrand's name in advertising the sale of the Cash Flow System, that Plaintiff LeGrand did not give Defendant Real Solutions his express written or oral consent to the use of his name and that Defendant Royal Media was without authority to give Defendant Real Solutions any consent to use Plaintiff LeGrand's name (Dkt. 83 at 4-5). Consequently, Plaintiffs assert Defendant Real Solutions violated Florida Statue § 540.08(1).

Plaintiffs also note that Defendant Real Solutions has previously argued that its allegedly unauthorized use of Plaintiff LeGrand's name is protected by Florida Statute § 540.08(3)(b).[2] Under subsection (3)(b), the provisions of section 540.08 do not apply to:

> [t]he use of such name, portrait, photograph, or other likeness in connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property where such person has consented to the use of her or his name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof. . . .

---

[2] Plaintiffs state this argument was raised by Defendant Real Solutions in its Motion to Dismiss (Dkt. 26).

Plaintiffs assert Defendant Real Solutions argument that Plaintiffs consented to the initial sale of the Cash Flow Systems to the IMH parties and that Defendant Real Solutions only acquired and resold the materials when the IMH parties were unable to pay for them is an argument without merit. Plaintiffs contend that Defendant Real Solutions' sale of the materials was the initial sale, not a resale, as the Plaintiffs never consented to any sales or distributions of the materials by Defendant Real Solutions (Dkt. 83 at 6).

Plaintiffs further outline that Defendant Real Solutions argument that it resold the materials, after the initial sale was made to the IMH parties, is based upon the "first sales doctrine" which is often applied in copyright cases (Dkt. 83 at 6-7). Plaintiffs argue the first sales doctrine, whose statutory version in Florida is section 540.08(3)(b), provides that after an initial sale of a copyrighted work, the copyright holder loses the ability to control the subsequent distribution of that particular copy of the work. See ISC-Bunker Ramo Corp. v. Altech, Inc., 765 F. Supp. 1310, 1331 (N.D. Ill. 1990). The Plaintiffs contend, however, that the first sales doctrine, and thus the protection afforded by section 540.08(3)(b), is inapplicable here as the transaction by which the IMH parties were to have taken possession of the Cash Flow System materials from Defendant Royal Media would not have constituted an initial sale. The Plaintiffs further contend that pursuant to the Agreement, the Plaintiffs did not consent to the initial sale of the materials to the IMH parties, but rather agreed to allow the initial sale or distribution of the materials to occur by the IMH parties. In other words, an initial sale would occur only when the IMH parties proceeded to sell the materials to the public. As such an initial sale failed to materialize, Plaintiffs argue section 540.08(3)(b) is inapplicable and Defendant Real Solutions cannot seek its protection.[3]

Defendant Real Solutions conversly argues genuine issues of material fact exist as to the

---

[3] Plaintiffs alternatively argue that even if Defendant Royal Media had made an actual sale to Defendant Real Solutions, rather than via their consignment arrangement, an initial sale for purposes of the first sale doctrine would still not have occurred as Defendant Royal Media is not authorized to make such a sale (Dkt. 83 at 8).

applicability of Florida Statute § 540.08(3)(b). Indeed, Defendant Real Solutions contends material facts remain as to the nature of Plaintiff LeGrand's consent to the IMH parties for the use of his name on the Cash Flow System materials, whether Plaintiff LeGrand's licensing of the use of his name to the IMH parties constitutes a "distribution" under section 540.08(3)(b), the extent to which the IMH parties' failure to pay Defendant Royal Media for the materials constituted an initial sale or distribution as well as the extent of the IMH parties' agreement that Defendant Royal Media sell the materials to Defendant Real Solutions, on the IMH parties' behalf, equates to an initial sale or distribution of the materials (Dkt. 92 at 9).[4]

After thoroughly examining the pleadings and documentation submitted by both parties, the Court agrees with Defendant Real Solutions and finds that genuine issues of material fact exist as to Count II (invasion of privacy) and that summary judgment is therefore inappropriate. The Court notes that Defendant Real Solutions does not dispute that it used the name "Ron LeGrand" in its advertisements and that Plaintiff LeGrand never gave express written or oral consent to Defendant Real Solutions to use his name. As Plaintiffs argue, such unauthorized use of Plaintiff LeGrand's name would appear to violate the express language of Florida Statute § 540.08(1). However, as Defendant Real Solutions contends and this Court agrees, "the question here" is the applicability of the exemption provided in section 540.08(3)(b) (Dkt. 92 at 9).

The Court specifically finds, after reviewing the deposition transcripts, that genuine issues remain concerning consent, the initial sale, resale and distribution of the Cash Flow System materials. For instance, the deposition transcripts reveal that the IMH parties were bought by Russ Whitney of the Whitney

---

[4] Defendant Real Solutions also raises whether Plaintiffs attempt to apply federal copyright case law analysis in regards to the Florida privacy statute is proper (Dkt. 92 at 10-11).

Education Group ("Whitney Group"). See (Dkt. 92, attached transcript at 5); (Dkt. 88 at 12). The Whitney Group allegedly proceeded to contact Defendant Royal Media and to purchase approximately 1500 units of the Cash Flow System that were originally assembled and produced for the IMH parties (Dkt. 88 at 14). However, the Whitney Group did not purchase all of the available Cash Flow System units. The President of Defendant Royal Media, Stan Roy, therefore called David Reecher, former Chief Executive Officer ("CEO") of SDI LeGrand Publishing, Inc. ("SDI LeGrand")[5], to discuss this matter. Mr. Roy informed Mr. Reecher that he had spoken to current CEO of the IMH parties Jose Alvarez and that Mr. Alvarez allegedly stated that Mr. Roy could use the Cash Flow System materials in any manner he desired as he did not consider it to be an "SDI issue." (Dkt. 92, attached transcript at 12-13). Mr. Reecher alleges that he contacted Mr. Alvarez and that Mr. Alvarez understood the materials were not "SDI's property anymore" due to the acquisition by the Whitney Group and that the Whitney Group had "abandoned" the remaining Cash Flow System materials. Id. Mr. Reecher continues that "Mr. Alvarez said if you can find me a buyer or somebody that will take that off Stan[] [Roy's] hands, that it'll be an issue that SDI won't have to deal with even though its not really SDI material, we feel obligated to Stan. . . ." Id. at 26. Mr. Reecher allegedly informed three or four people about Defendant Royal Media's possession of the Cash Flow System materials and Defendant Real Solutions' CEO was the only person to call Mr. Roy. Id. at 27.

Moreover, according to Mr. Reecher, SDI LeGrand was the copyright holder of the Cash Flow System materials and that when the Whitney Group acquired the IMH parties, "they would become the second person with[] that property ownership. But because they abandoned that property with the printer [Defendant Royal Media], never paid for it, then we looked at it and they looked at it as being third-party

---

[5] From Mr. Reecher's deposition, it appears he was the CEO of all the IMH parties (Dkt. 92, attachment at 44).

material now, and that Stan Roy was the rightful owner of it." <u>Id.</u> at 28. Echoing a similar sentiment was Mr. Roy when he states he had no knowledge that limitations existed as to who could be sold the Cash Flow System materials (Dkt. 88 at 34). Mr. Roy adds that he contacted the IMH parties prior to selling the materials to Defendant Real Solutions to see if they agreed and "[t]hey said of course. Not only did they say of course, they said this would be terrific because it will be less money that we'll owe you in our settlement." <u>Id.</u> at 42. Mr. Roy also provides that when he received the initial purchase order to produce the Cash Flow System materials, "the people who gave me the purchase order gave me the rights to sell the product." <u>Id.</u> at 47. Furthermore, Mr. Roy states he was contacted by the IMH parties and told he could sell the Cash Flow System materials to the Whitney Group and that it was communicated to him that Plaintiff LeGrand knew of this transaction (Dkt. 88, attachment at 39-42). Based upon the existence of these unresolved facts, the Court finds that summary judgment as to Count II (invasion of privacy) is inappropriate. <u>See</u> (Dkt. 92 at 29, 43, 45).

**B.     Copyright Infringement**

Count III in Plaintiffs' Verified Amended Complaint charges Defendants with copyright infringement as Plaintiffs allege it is undisputed that Plaintiff Heritage is the rightful owner of a valid copyright, effective January 13, 2004, for the Cash Flow System. <u>See</u> (Dkt. 83, Exhibit F). Plaintiffs outline that "[t]o establish a prima facie case of copyright infringement, the plaintiff must show that (1) it is the valid owner of a copyright and (2) defendant has engaged in unauthorized 'copying,' where 'copying' 'is shorthand for the infringing of any of the copyright owner's five exclusive rights, described at 17 U.S.C. § 106." <u>Microsoft Corp. v. Harmony Computers & Electronics, Inc.</u>, 846 F. Supp. 208, 210 (E.D. N.Y. 1994)(internal citations omitted). <u>See</u> <u>Major League Baseball Promotion Corp. v. Colour-Tex, Inc.</u>, 729 F. Supp. 1035, 1039 (D. N.J. 1990)(noting "[i]ntent or knowledge is not an element of copyright

infringement. If a defendant admits to using copyrighted material, that alone would make the defendant liable for copyright infringement, absent the owner's authorization.")(internal citations omitted). Plaintiffs assert that a prima facie case against Defendant Real Solutions exists as Plaintiffs are the owners of a valid copyright on the Cash Flow System and that Defendant Real Solutions has engaged in unauthorized "copying" by its distribution of these materials to the public without receiving the consent or authorization of the copyright owner. See also Am. Int'l Pictures, Inc. v. Foreman, 576 F.2d 661, 665 (5th Cir. 1978)("[i]n copyright law the copyright certificate is prima facie evidence that the copyright holder retains all rights granted by the copyright.")(internal citations omitted). Plaintiffs also argue the fact Defendant Real Solutions had possession of the Cash Flow System materials does not alter the infringement analysis (Dkt. 83 at 12). See Platt & Munk Co., Inc. v. Republic Graphics, Inc., 315 F. 2d 847 (2d Cir. 1963).[6]

Plaintiffs alternatively note that the Copyright Act has its own version of the first sale doctrine, which limits the copyright owner's right to distribute copies of the copyrighted work to the public (Dkt. 83 at 11). See 17 U.S.C. § 109(a).[7] Nevertheless, Plaintiffs assert it is clear that the first sale doctrine is inapplicable here and thus does not shield Defendant Real Solutions from liability. Plaintiffs argue that because Defendant Real Solutions is unable to trace its purchase of the Cash Flow System materials to the Plaintiffs or a party authorized by the Plaintiffs to sell the materials, the first sale doctrine does not apply. Harmony Computers & Electronics, Inc., 846 F. Supp. at 212 ("[a]lthough a sale of a copyrighted work by

---

[6] Plaintiffs are seeking enhanced statutory damages for the alleged copyright infringement as they argue the alleged infringement, after January 13, 2004, was willful. See 17 U.S.C. § 504(c)(2).

[7] 17 U.S.C. § 109(a) provides:
> Notwithstanding the provisions of section 106(3) [17 U.S.C. § 1106(3)], the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.

a party authorized by the copyright holder may constitute a 'first sale' for purposes of the first sale doctrine, defendants have the burden of tracing the chain of title to show that their authority to sell [the copyrighted product] flows from the copyright holder.")(internal citations omitted). Consequently, Plaintiffs contend there is no genuine issue as to any material fact with regard to Count III (copyright infringement) and that Plaintiffs are therefore entitled to summary judgment.

Defendant Real Solutions responds that Plaintiffs have not established that the item copyrighted, effective January 13, 2004, is the same item Defendant Real Solutions "purchased from the IMH parties and Royal Media" in the summer of 2003 and subsequently resold via the internet (Dkt. 92 at 12). Indeed, Defendant Real Solutions argues Plaintiffs have not even established that they hold a copyright over the item in dispute as the item contains the following copyright legend: "Copyright 2003 SDI LeGrand Publishing Inc." Id. at 13. Defendant Real Solutions also asserts Plaintiffs have "incompletely stated" the law regarding prima facie evidence in copyright cases. That pursuant to 17 U.S.C. § 410(c), the mere production of a Certificate of Registration is not prima facie evidence of a valid copyright unless the certificate is obtained within five years after the "first publication" of the work.[8] Defendant Real Solutions provides the Certificate of Registration here lists the "first publication" of this work to be in 1995, which is well beyond this safe harbor provision (Dkt. 92 at 13). Lastly, Defendant Real Solutions notes that Plaintiffs have ignored sworn testimony given by Mr. Reecher while he was being deposed by Plaintiffs' counsel. Mr. Reecher states that the written materials sold to Defendant Real Solutions that were then sold over the internet were "totally different" from the written materials produced by Plaintiff LeGrand (Dkt.

---

[8] 17 U.S.C. § 410(c) states:
> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

92 at 14). Defendant Real Solutions therefore contends summary judgment as to Count III (copyright infringement) is not appropriate.

This Court agrees with Defendant Real Solutions. At a minimum, the Court is curious as to the responses Mr. Reecher gave during his deposition. For instance, Mr. Reecher provides that "I stated it a couple times in this deposition, that the material that Stan Roy created at the end was very different, very different than Ron LeGrand's original Cash Flow Systems." (Dkt. 92, attachment at 42). Mr. Reecher continues that the material Stan Roy developed "was based on the Cash Flow Library, not the Cash Flow Systems." Id. at 43. Furthermore, Mr. Reecher states the following in response to a question asking if Plaintiff LeGrand's name was attached to the units Mr. Roy had: "No. The only place you would find Ron LeGrand's name, I believe, would be actually listening to the CDs, because he'd introduce himself as Ron LeGrand. But there was nothing in the actual written material because it was a Cash Flow Library." Id. at 51.

Based upon Mr. Reecher's deposition, the Court is unable to discern if what Defendant Real Solutions was selling over the internet is in fact the materials Plaintiffs have copyrighted. While the record could lead the Court to assume the materials were in fact one and the same, such an assumption would be improper. See (Dkt. 83, Exhibits A-F at 5). The Court also finds questions remain as to the applicability of the first sale doctrine. Consequently, because genuine issues of material fact exist, Plaintiffs request for summary judgment as to Count III (copyright infringement) is denied.

Accordingly, upon due consideration, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiffs' Motion for Partial Summary Judgment, "Dispositive Motion," (Dkt. 82) is **DENIED.**
2. Plaintiffs Request for Oral Argument (Dkt. 85) is **DENIED as moot.**

BY ORDER OF THE COURT, at Jacksonville, Florida, this __19__ day of October, 2005.

Copies to:
Counsel of Record

JOHN H. MOORE II
United States District Judge